UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHARLES GATLING,

                Plaintiff,

                                      **Hon. Hugh B. Scott**

                                      **14CV232S**

v.

                                      **Report**
                                      **&**
                                    **Recommendation**

BRIAN FISCHER,
CHRISTOPHER R. WEGNER, et al.,

                Defendants.

---

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 25, dispositive referral; cf. Docket No. 10). The instant matter before the Court is a motion of defendant Christopher Wegner ("defendant" or "Wegner") (Docket No. 24) for summary judgment. Responses initially were due by December 20, 2016 (Docket No. 26), but plaintiff moved several times (Docket Nos. 27, 30) for extension of time to respond and for appointment of pro bono counsel (Docket No. 32). The briefing schedule was extended (Docket Nos. 28, 31) but denied appointment of counsel (Docket No. 33). Responses then were due by April 3, 2017, with reply due April 10, 2017 (Docket Nos. 31, 33); defendant did not submit a reply.

Plaintiff responded with what he called an "Amended Complaint" (Docket No. 34) but the document is a response to defendant's motion, listing how he exhausted his claims

administratively before filing suit.  Attached to this response are exhibits of plaintiff's grievance and administrative responses to the grievance (id.).

## BACKGROUND

This is a pro se civil rights action commenced by plaintiff as an inmate.  He alleges excessive force was used against him (Docket Nos. 1, Compl., 6, Am. Compl.).  On June 1, 2013, plaintiff was incarcerated at the Attica Correctional Facility ("Attica") as a temporary transfer to testify in another case (Docket No. 24, Def. Statement ¶¶ 5, 6).  Plaintiff was housed in Attica's infirmary (id. ¶ 7).  On that day, defendant corrections officer Wegner was on duty and conducted the morning inmate head count, ordering plaintiff to stand for the count (id. ¶¶ 8-9).  Plaintiff thought that, since he was in the infirmary, he did not have to stand for that count (id. ¶ 10) and plaintiff went back to sleep (id. ¶ 11).  Plaintiff later alleged in the Amended Complaint (Docket No. 6, ¶¶ 6-9) that he did stand at Wegner's command (Docket No. 24, Def. Statement ¶ 14).  Wegner entered plaintiff's room and told him to stand (id. ¶ 12).  Plaintiff states that he stood up and Wegner punched him in the face and told him to keep his mouth shut (id. ¶ 13).  Plaintiff claims that Wegner punched plaintiff three times in the right eye, forehead, and cheek (id. ¶ 15), but alleged in the Amended Complaint (Docket No. 6, ¶¶ 6-9) that he was hit only two times (Docket No. 24, Def. Statement ¶ 16).  He claims that he had a knot over his right eye and swelling under that eye as a result of the blows (id. ¶ 50), later complaining to a nurse that he had a swollen left side of his face (id. ¶ 51).  Plaintiff never received medical treatment for these injuries (id. ¶ 52), although plaintiff was treated for other ailments while in custody (id. ¶¶ 48-49).

Upon his return to the Auburn Correctional Facility ("Auburn"), plaintiff complains that he still had a small knot over his right eye and pain for three or four days (id. ¶¶ 53-54). But plaintiff alleged in the Amended Complaint that he would be "incapacitated for a long time to come" with "permanent" injuries that preclude him from returning to his duties (Docket No. 6, Am. Compl. ¶ 11; Docket No. 24, Def. Statement ¶ 55). But plaintiff later testified that he had no long lasting problems as a result of this incident (Docket No. 24, Def. Statement ¶ 56; see id., Def. Atty. Decl., Ex. A, Pl. EBT Tr. at 66). Plaintiff was seen by Attica medical staff on June 1, 2013, between 6:00 am and 1:30 pm and from 3:45 to 6:00 pm, with no indication of the injuries he now claims (Docket No. 24, Def. Statement ¶ 57; id., Def. Atty. Decl., Ex. C, Bates Nos. 000691-92). Subsequent medical treatment did not reveal any alleged injury (Docket No. 24, Def. Statement ¶¶ 58, 59; id., Def. Atty. Decl., Ex. C, Bates Nos. 000381, 000380, 000459, 000458, 000378, 000475).

Plaintiff later told a nurse that he wanted to hurt himself and was placed in an observation cell on suicide watch (id. ¶ 17; see id. ¶ 18 (plaintiff remains on suicide watch for two or three days)). While in observation, plaintiff was examined by three mental health professionals. Plaintiff later testified in court in the other case and eventually was transferred to Attica's general population. (Id. ¶¶ 19-23.) During this period, he was also seen by medical staff, at Attica and later at his prior facility, Auburn, after his return (id. ¶¶ 24-26).

Plaintiff was familiar with the facility's grievance process (see id. ¶¶ 31, 34-36; see also id. ¶¶ 27-30 (review of grievance and appellate processes)). Plaintiff, however, did not file a grievance at Attica for Wegner striking him (id. ¶ 33) but did file a grievance at Auburn after plaintiff's return (id. ¶¶ 37-39 (grievance number AUB 13 63183-13)), dating this grievance

June 1, 2013, but it was served on July 3, 2013 (Docket No. 34, Pl. Response, Ex. A). Grievances alleging staff harassment are sent directly to the facility's Superintendent (id. ¶ 29). Lieutenant Quinn investigated AUB 13 63813-13 and Wegner submitted a memorandum denying striking plaintiff (id. ¶¶ 40, 41). Grievance AUB 13 63813-13 was denied by the Superintendent of Auburn (id. ¶ 44). Plaintiff did not appeal this denial (id. ¶ 45). Defendants state that no one at Attica told plaintiff not to file a grievance while he was there (id. ¶ 46). Plaintiff later wrote asking about the status of grievance AUB 13 63813-13 and was told that he never appealed the denial (id. ¶ 47).

Plaintiff filed an Amended Complaint (Docket No. 6) against Wegner, Commissioner Brian Fischer, Attica Superintendent Mark Bradt, and corrections officer Quinn. This Court dismissed claims against defendants Fischer, Bradt, and Quinn (Docket No. 7, Order of June 29, 2015). Defendant Wegner then answered (Docket No. 9).

*Defendant Wegner's Motion for Summary Judgment (Docket No. 24)*

Defendant Wegner first contends that plaintiff failed to exhaust his administrative remedies arising from this incident (Docket No. 24, Def. Memo. at 4-7). Defendant also argues that the alleged force used against plaintiff was minimal and plaintiff's claims should therefore be dismissed (Docket No. 24, Def. Memo. at 7-10). He points out that plaintiff claimed that he was struck three times after failing to report for a count but plaintiff admitted that he did not seek medical treatment for it (id. at 10).

Plaintiff responds by repeating his Amended Complaint (Docket No. 34, "Amended Complaint," at 1; id., Pl. Notice of Motion for Response to Def. Summary Judgment Motion, Statement of Undisputed Facts at 2-11). He expressly disputes defendants' fact that plaintiff

4

failed to grieve the claims asserted in this action (id., Pl. Notice of Motion for Response to Def. Summary Judgment Motion, Statement of Undisputed Facts at 1). He attached documents of his grievance and subsequent proceedings (id., at pages 15 of 23 to 21 of 23). Plaintiff included a letter from Karen Bellamy, director of Inmate Grievance Program, which stated that plaintiff had not appealed from the denial of his grievance to the Central Officer Review Committee in August 2014 (id. at page 21 of 23). Plaintiff also disputes that he endured only de minimis force and failed to seek treatment for almost a month (id. at page 2 of 23, Notice of Motion for Response to Defendants Summary Judgment Motion).

## DISCUSSION

I.   Applicable Standards

   A.   Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec. 2010). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).

5

While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). The opponent to a summary judgment motion may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2) (effective Jan. 1, 2011). The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2). If an opponent fails to file a refuting statement of facts, the facts stated by movant are deemed admitted, id. Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id. Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

As with pleadings, the filings of a pro se plaintiff in response to a summary judgment motion are to be liberally construed, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam).

B.     Exhaustion

The Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), requires an inmate plaintiff to establish that he has first exhausted his available administrative remedies before commencing his civil rights action (Docket No. 24, Def. Memo. at 4-5). As noted by defendant (Docket No. 24, Def. Memo. at 5-6; id., Cheryl Parmiter Decl. ¶¶ 3-6), New York State has a three-tier grievance and appellate process for inmate complaints, 7 N.Y.C.R.R. § 701.5; see Hemphill v. N.Y., 380 F.3d 680, 682 (2d Cir. 2004). To comply with PLRA, an inmate first must exhaust these procedures before filing his civil rights action. The inmate first has to file a grievance with the Inmate Grievance Resolution Committee (or "IGRC"). Decision from that committee may be appealed to the facility's superintendent, and appeals from the superintendent's decision are made to the Central Office Review Committee ("CORC"). (Docket No. 24, Def. Memo. at 5-6; id., Parmiter Decl. ¶¶ 3-6).

C.     Excessive Force

The Eighth Amendment prohibits cruel and unusual punishment. The use of force that exceeds this constitutional standard is force that results in more than superficial injuries, that the use of force is repugnant to mankind, Whitley v. Albers, 475 U.S. 312, 327 (1986); Estelle v. Gamble, 429 U.S. 97 (1976). The "unnecessary and wanton infliction of pain," Gamble, supra, 429 U.S. at 103 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)), constitutes cruel and unusual punishment, Ingraham v. Wright, 430 U.S. 651, 670 (1977); Albers, supra, 475 U.S. at 319. As noted by the Albers Court, "the infliction of pain in the course of a prison security

measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense," 475 U.S. at 319.

An excessive force claim has an objective and subjective element, Suarez v. Kremer, No. 03CV809, 2008 U.S. Dist. LEXIS 119809, at *13-14 (W.D.N.Y. June 13, 2008) (Scott, Mag. J.), adopted, 2006 U.S. Dist. LEXIS 92754 (W.D.N.Y. Dec. 222, 2006) (Arcara, Ch.J.); Mayo v. Lavis, No. 11CV869, 2016 U.S. Dist. LEXIS 62994, at *15 (W.D.N.Y. May 12, 2016) (Skretny, J.) (objective prong that defendant violated contemporary standards of decency and subjective prong that defendant acted wantonly), aff'd on other grounds, No. 16-1664-pr, slip. op. (2d Cir. Apr. 26, 2017) (Summary Order) (Docket No. 24, Def. Memo. at 7-8). For the objective element and to show violation of contemporary standards of decency, the inmate must establish that the force allegedly applied upon him was "sufficiently serious" to constitute cruel and unusual punishment and that defendant's actions amounted to "deliberate indifference," Farmer v. Brennan, 411 U.S. 825, 834 (1994) (id. at 8). Not "every malevolent touch by a prison guard gives rise to a federal cause of action," Hudson v. McMillian, 503 U.S. 1, 9-10 (1992), citing favorably Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert denied sub nom. John v. Johnson, 414 U.S. 1033 (1973) ("not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights") (id. at 7). For the subjective element, plaintiff needs to show that defendant had a wanton state of mind when he engaged in the misconduct, e.g., Suarez, supra, 2008 U.S. Dist. LEXIS 119809, at *13-14 (internal citations omitted) (id. at 8), with that being determined whether the force used was in a good faith effort to maintain order and discipline or was "maliciously and sadistically to cause

8

harm," Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003); Mayo, supra, 2016 U.S. Dist. LEXIS 62994, at *15.

II.     Application

Plaintiff did not submit a statement of material facts, thus under this Court's Local Civil Rule 56(a)(2) defendant's statement of facts is deemed admitted.

A.      Exhaustion of Administrative Relief

Defendant established that plaintiff here failed to exhaust his administrative remedies. Plaintiff in his response admits that he did not appeal to the CORC (Docket No. 34, Pl. Response at page 21 of 23) and had earlier skipped steps by attempting to approach directly the CORC and not follow the grievance and appellate processes (id. at page 20 of 23). For this reason, defendant Wegner's motion for summary judgment (Docket No. 24) should be **granted**.

Plaintiff does not contend that he could not fully grieve or appeal his claim (either at Attica or later at Auburn), cf. Hemphill, supra, 380 F.3d at 686, this Court need not comment on the continued viability of the Second Circuit special circumstance exception from the PLRA exhaustion requirement, Ross v. Blake, ____ U.S. ___, 136 S.Ct. 1850, 1854-55 (2016); Williams v. Prianto, 829 F.3d 118, 123 (2d Cir. 2016) (Ross analysis supplants Hemphill and related Second Circuit special circumstances analysis). Plaintiff also does not claim the absence of an administrative remedy, see Ross, supra, 136 S.Ct. at 1858-59; Williams, supra, 829 F.3d at 123. Finally, he is not contending that his transfer back to Auburn from Attica hindered him from filing a grievance or (importantly here) appealing the denial of the grievance he filed at Auburn.

9

For a complete record, the merits of plaintiff's excessive force claim next will be considered.

B.   Excessive Force

Alternatively, defendant contends that the force applied was de minimis and not rising to a constitutional violation (Docket No. 24, Def. Memo. at 7-10). Plaintiff here merely alleges that he was punched in the face and, according to the defense, did not seek medical treatment for that injury. As for the excessive force objective prong, crediting plaintiff's version he did not suffer a sufficiently serious injury by being punched two to three times to constitute cruel and unusual punishment, e.g., McEachin v. Bek, No. 06CV6453, 2012 U.S. Dist. LEXIS 46323, at *18 (W.D.N.Y. Apr. 2, 2012) (Telesca, J.) (inmate allegedly struck three times by a closed fist held to be de minimis); Romaine v. Rawson, 140 F. Supp.2d 204, 212 (N.D.N.Y. 2001) (inmate held unable to show serious injury from being struck in the head by three slaps or three closed fist strikes); Evans v. Balmer, No. 13CV805, 2017 U.S. Dist. LEXIS 43490, at *13-15 (W.D.N.Y. Mar. 24, 2017) (Telesca, J.) (denying inmate's excessive force claim where plaintiff did not suffer outstanding injuries and had only a swelling near his eye); Mayo, supra, 2016 U.S. Dist. LEXIS 62994, at *18 (alternatively, inmate claim fails because the force applied being pushed onto a bench, punched in the face and thrown to the floor held to be de minimis, citing cases), aff'd on other grounds, No. 16-1664-pr, slip. op. (2d Cir. Apr. 26, 2017).

As for the subjective prong for this claim, the record does not show that Wegner had sufficient malice to indicate a wanton state of mind. He merely sought plaintiff's compliance with his order to participate in the inmate count. Plaintiff was ordered twice to stand for the head count but he refused. Again accepting plaintiff's version of events, he was struck at least twice

10

and had resulting pain for three to four days thereafter for which he did not seek treatment (see Docket No. 24, Def. Memo. at 10). Plaintiff was temporarily transferred into Attica and the record states no malice has arisen between him and officer Wegner to explain a wanton attack.

Plaintiff's claim for excessive force by defendant Wegner fails and Wegner's motion for summary judgment (Docket No. 24) should be **granted** on this alternative ground.

## CONCLUSION

Based upon the above, it is recommended that defendant Wenger's motion for summary judgment (Docket No. 24) be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
April 26, 2017